MORGAN, LEWIS & BOCKIUS LLP
James J. Dragna, SBN 91492
jim.dragna@morganlewis.com
David L. Schrader, SBN 149638
david.schrader@morganlewis.com
Yardena R. Zwang-Weissman, SBN 247111
yardena.zwang-weissman@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, California 90071-3132
Telephone:   213.612.2500
Facsimile:    213.612.2501

*Attorneys for Plaintiff*
*Southern California Gas Company*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTHERN CALIFORNIA GAS COMPANY,<br><br>*Plaintiff*,<br><br>v.<br><br>COUNTY OF LOS ANGELES, CALIFORNIA; MARY C. WICKHAM, in her official capacity as Los Angeles County Counsel; STATE OF CALIFORNIA DEPARTMENT OF INDUSTRIAL RELATIONS; STATE OF CALIFORNIA DIVISION OF OCCUPATIONAL SAFETY AND HEALTH; JULIANN SUM, in her official capacity as Chief of the State of California Division of Occupational Safety and Health; and STATE OF CALIFORNIA OCCUPATIONAL SAFETY AND HEALTH APPEALS BOARD,<br><br>*Defendants*. | Case No. 2:17-cv-5140<br><br>**PLAINTIFF SOCALGAS' COMBINED BRIEF IN OPPOSITION TO ALL DEFENDANTS' MOTIONS TO DISMISS**<br><br>Date:      December 4, 2017<br>Time:     1:30 pm<br>Ctrm.:    7D<br>Judge:    Hon. Dale S. Fischer |

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................1

BACKGROUND .....................................................................................................4

I.      Parties to the Action .......................................................................................4

II.     Defendants Are Engaged in Ongoing Efforts to Impose and Enforce
        Preempted Safety Standards for SoCalGas' Facilities. .................................5

        A.      The County is engaging in preempted efforts to regulate safety
                standards for SoCalGas' facilities. .......................................................6

        B.      Cal/OSHA has cited SoCalGas for allegedly violating
                preempted state safety standards. .........................................................7

III.    Federal Law Expressly Preempts State and Local Safety Standards for
        Natural Gas Pipeline and Storage Facilities. .................................................8

ARGUMENT ........................................................................................................10

I.      Standards on Motion to Dismiss...................................................................10

II.     This Court Has Federal Subject Matter Jurisdiction Under the PSA. .........11

III.    SoCalGas Has Stated Valid Claims for Relief Under the PSA....................13

        A.      SoCalGas has stated a claim for relief against the County. ...............13

        B.      SoCalGas has stated a claim for relief against Cal/OSHA. ..............15

IV.     The Anti-Injunction Act Does Not Bar This Action. ...................................17

V.      Abstention Is Unavailable Under Any Abstention Doctrine.........................18

        A.      The *Colorado River* abstention doctrine is inapplicable....................19

        B.      *Younger* abstention is precluded. ......................................................20

VI.     The County Is Not Immune Under *Noerr-Pennington*. ..............................22

VII.    The County Received Required Notice Under the PSA. ..............................22

CONCLUSION ......................................................................................................23

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Abramson v. Florida Gas Transmission Co.*,
    909 F. Supp. 410 (E.D. La. 1995)......................................................................17

*Alton Box Bd. Co. v. Esprit de Corp.*,
    682 F.2d 1267 (9th Cir. 1982) ......................................................................11

*American Energy Corp. v. Texas Eastern Transmission, LP*,
    701 F. Supp. 2d 921 (S.D. Ohio 2010) ..........................................................17

*ANR Pipeline Co. v. Corporation Com'n of State of Okl.*,
    860 F.2d 1571 (10th Cir. 1988) ....................................................................12

*ANR Pipeline Co. v. Iowa State Commerce Comm'n*,
    828 F.2d 465 (8th Cir. 1987) ..........................................................................9

*Armstrong v. Armstrong*,
    696 F.2d 1237 (9th Cir. 1983) ................................................................11, 12

*Baggett v. Dep't of Prof'l Regulation*,
    717 F.2d 521 (11th Cir. 1983) .......................................................................21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................10

*Bennett v. Spear*,
    520 U.S. 154 (1997)......................................................................................15

*Bud Antle, Inc. v. Barbosa*,
    45 F.3d 1261 (9th Cir. 1994) ................................................................4, 18, 21

*Cedar Rapids Cellular Tel., L.P. v. Miller*,
    280 F.3d 874 (8th Cir. 2002) .........................................................................20

*Chamberlain v. Allstate Ins. Co.*,
    931 F.2d 1361 (9th Cir. 1991) .......................................................................12

*Champion Int'l Corp. v. Brown*,
    731 F.2d 1406 (9th Cir. 1984) .......................................................................18

# TABLE OF AUTHORITIES

Page(s)

*City and Cty. of San Francisco v. U.S. Dep't of Transp.*,
    796 F.3d 993 (9th Cir. 2015) ................................................................9, 11, 15

*Colorado Interstate Gas Co. v. Wright*,
    707 F. Supp. 2d 1169 (D. Kan. 2010)............................................................10

*Colorado River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976)..........................................................3, 18, 19, 20

*Deirmenjian v. Deutsche Bank*, A.G.,
    526 F. Supp. 2d 1068 (C.D. Cal. 2007) ........................................................10

*Easton v. Crossland Mortg. Corp.*,
    114 F.3d 979 (9th Cir. 1997) ........................................................................10

*England v. Louisiana State Bd. of Med. Exam'rs*,
    375 U.S. 411 (1964)......................................................................................13

*Gartrell Constr., Inc. v. Aubry*,
    940 F.2d 437 (9th Cir. 1991) .......................................................................21

*Guar. Nat. Ins. Co. v. Gates*,
    916 F.2d 508 (9th Cir. 1990) .......................................................................12

*Hallstrom v. Tillamook Cty.*,
    493 U.S. 20 (1989).......................................................................................23

*Hawaii Hous. Auth. v. Midkiff*,
    467 U.S. 229 (1984).....................................................................................19

*Int'l Paper Co. v. Ouellette*,
    479 U.S. 481 (1987).....................................................................................14

*Kentucky v. Graham*,
    473 U.S. 159 (1985)................................................................................22, 23

*Klamath-Siskiyou Wildlands Ctr. v. MacWhorter*,
    797 F.3d 645 (9th Cir. 2015) .......................................................................23

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994).....................................................................................10

ii

# TABLE OF AUTHORITIES

Page(s)

*Laclede Gas Co. v. St. Charles Cty., Mo.*,
  713 F.3d 413 (8th Cir. 2013) ...................................................................3, 11

*Law v. General Motors Corp.*,
  114 F.3d 908 (9th Cir. 1997) ............................................................14

*Mitchum v. Foster*,
  407 U.S. 225 (1972).............................................................................17

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)................................................................................20

*New Orleans Public Service, Inc. v. Council of City of New Orleans*,
  491 U.S. 350 (1989).............................................................................12

*Newberry v. Pac. Racing Ass'n*,
  854 F.2d 1142 (9th Cir. 1988) ...........................................................18

*Olympic Pipe Line Co. v. City of Seattle*,
  437 F.3d 872 (9th Cir. 2006) ......................................................passim

*Panhandle E. Pipe Line Co. v. Madison Cty. Drainage Bd.*,
  898 F. Supp. 1302 (S.D. Ind. 1995).....................................................17

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*,
  344 U.S. 237 (1952)..............................................................................11

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*,
  754 F.3d 754 (9th Cir. 2014) ...............................................................21

*S. Union Co. v. Lynch*,
  321 F. Supp. 2d 328 (D.R.I. 2004) ......................................................10

*San Diego Unions v. Garmon*,
  359 U.S. 236 (1959)..............................................................................14

*Shaw v. Delta Air Lines, Inc.*,
  463 U.S. 85 (1983)................................................................................12

*Sierra Club v. Korleski*,
  681 F.3d 342 (6th Cir. 2012) ...............................................................15

# TABLE OF AUTHORITIES

Page(s)

*Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200, AFL-CIO*,
611 F.3d 483 (9th Cir. 2010) ...........................................................4, 22

*Sprint Commc'ns, Inc. v. Jacobs*,
134 S.Ct. 584 (2013)...........................................................18, 20, 21

*Sw. Bell Tel. Co. v. Arkansas Pub. Serv. Comm'n*,
824 F.2d 672 (8th Cir. 1987) ...........................................................19

*Texas Midstream Gas Servs., LLC v. City of Grand Prairie*,
608 F.3d 200 (5th Cir. 2010) ...........................................................10, 16

*United Nurses Ass'ns of Cal. v. Nat'l Labor Relations Bd.*,
871 F.3d 767 (9th Cir. 2017) ...........................................................22

*United Parcel Serv., Inc. v. Cal. Pub. Utili. Comm'n*,
77 F.3d 1178 (9th Cir. 1996) ...........................................................13

*United States v. Morros*,
268 F.3d 695 (9th Cir. 2001) ...........................................................3, 19, 20

*United Steelworkers of Am., Local 12431 v. Skinner*,
768 F. Supp. 30 (D.R.I. 1991) ...........................................................8

*Washington Gas Light Co. v. Prince George's Cty. Council*,
711 F.3d 412 (4th Cir. 2013) ...........................................................9

**STATE CASES**

*Southern California Gas Company v. Occupational Safety & Health Appeals Board.*,
58 Cal. App. 4th 200 (1997) ...........................................................16

**FEDERAL STATUTES**

28 United States Code
Section 2201 ...........................................................11
Section 1331 ...........................................................10, 12
Section 2283 ...........................................................3, 17, 18

PLAINTIFF'S COMBINED OPPOSITION TO
MOTIONS TO DISMISS; CASE NO. 2:17-CV-5140

# TABLE OF AUTHORITIES

Page(s)

49 United States Code
    Section 60101 ...................................................................................passim
    Section 60102 ...................................................................................8, 15, 16
    Section 60104 ...................................................................................passim
    Section 60105 ...................................................................................9, 23
    Section 60121 ...................................................................................passim
    Section 60141 ...................................................................................5

Federal Rules of Civil Procedure
    Rule 12.............................................................................................10

FEDERAL REGULATIONS

81 Federal Regulations
    Section 91860 (Dec. 19, 2016) .......................................................5

STATE STATUTES

California Public Utilities Code
    Section 955(b)..................................................................................9

**INTRODUCTION**

Defendants the County of Los Angeles, Mary C. Wickham in her official capacity as County Counsel, (together "the County"), the State of California Division of Occupational Safety and Health, the State of California Occupational Safety and Health Appeals Board, and Juliann Sum in her official capacity as Division Chief (together "Cal/OSHA"), are improperly attempting to impose and enforce federally preempted state and local safety requirements on Plaintiff Southern California Gas Company's ("SoCalGas") natural gas pipeline facilities and underground gas storage facilities in violation of the federal Pipeline Safety Act ("PSA"), 49 U.S.C. § 60101 *et seq*.

Following the 2015-2016 gas leak from SoCalGas' Aliso Canyon Underground Gas Storage Facility ("Aliso Canyon"), the County has, among other actions, filed a civil action in state court alleging that SoCalGas' natural gas pipeline and storage facilities are "public nuisances" under state law and seeking an order requiring SoCalGas to install new safety valves and other safety-related equipment on all gas storage wells and pipelines throughout the County. Cal/OSHA similarly seeks to compel SoCalGas to adopt state-regulated inspection, maintenance, and operation practices at Aliso Canyon through issuing citations and imposing administrative penalties on SoCalGas for allegedly violating state safety rules.  Defendants' regulatory efforts are unlawful and unnecessary.

Under the PSA, safety standards for natural gas pipeline and underground gas storage facilities are under the exclusive regulatory jurisdiction of the United States Department of Transportation ("DOT"), Pipeline and Hazardous Materials Safety Administration ("PHMSA").  The Ninth Circuit has held that the PSA expressly preempts all state and local safety standards for such facilities and prohibits safety regulation by state and local governmental authorities except as authorized by PHMSA. *See Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d

872, 877 (9th Cir. 2006); 49 U.S.C. § 60104(c).  PHMSA has not authorized Defendants to regulate safety standards for SoCalGas' facilities.

The California Public Utilities Commission ("CPUC") is the only state authority certified by PHMSA to participate in safety oversight of SoCalGas' facilities. With respect to underground gas storage, the CPUC implements its delegated federal authority through a cooperative agreement with the California Department of Conservation, Division of Oil, Gas, and Geothermal Resources ("DOGGR"), which has special expertise in gas well safety.  The authorized regulators have vigorously responded to the 2015-2016 gas leak.  Among other things, PHMSA has promulgated new federal safety standards for underground gas storage facilities, and the CPUC and DOGGR have validated the safety of the Aliso Canyon facility's gas storage wells pursuant to an exhaustive testing program.  According to DOGGR, Aliso Canyon "has undergone more safety and regulatory scrutiny during this period than any of California's thirteen other underground natural gas storage facilities, and likely more safety scrutiny from a regulatory agency than any other gas storage facility in the United States." Request for Judicial Notice ("RJN"), Ex. 1 at 22.

Defendants' efforts to impose additional state and local safety requirements on SoCalGas' facilities without PHMSA authorization violate the PSA's express prohibition against unauthorized state and local safety regulation.  49 U.S.C. § 60104(c).  Accordingly, SoCalGas served the required pre-filing notice of violation on Defendants, PHMSA, the CPUC, and DOGGR.  *See id.* § 60121(a); Complaint of Plaintiff SoCalGas, Dkt. No. 1 ¶ 12 ("Compl."), Ex. A.  Defendants have refused to comply with the PSA, forcing SoCalGas to bring this action for injunctive and declaratory relief.

In response, Defendants have moved for dismissal or abstention in favor of their preempted state proceedings.  All of Defendants' arguments fail under two sections of the PSA: (1) section 60121, which provides an express federal right of

PLAINTIFF'S COMBINED OPPOSITION TO
MOTIONS TO DISMISS; CASE NO. 2:17-CV-5140

1  action to enjoin violations of the PSA; and (2) section 60104, which expressly
2  preempts regulation by unauthorized state and local authorities.

3       Defendants' arguments that this Court lacks jurisdiction and that SoCalGas
4  has failed to state a claim ignore section 60121's express federal right of action
5  authorizing any person to "bring a civil action in an appropriate district court of the
6  United States for an injunction against … governmental authorities … for a
7  violation" of the PSA. 49 U.S.C. § 60121(a).  Section 60121 applies here because
8  Defendants are "governmental authorities" and their efforts to impose preempted
9  safety standards on SoCalGas' facilities violate section 60104's express
10  preemption provision, as the Ninth Circuit and other federal courts of appeal have
11  confirmed.  *See Olympic*, 437 F.3d at 877; *Laclede Gas Co. v. St. Charles Cty.,*
12  *Mo.*, 713 F.3d 413, 418 (8th Cir. 2013) (preempted regulation provides
13  "jurisdiction under [the] PSA … for the purposes of injunctive relief.").

14       Section 60121's federal right of action also defeats Defendants' Anti-
15  Injunction Act arguments.  The Anti-Injunction Act prohibits federal courts from
16  enjoining state litigation except where Congress has expressly authorized
17  injunctive relief.  28 U.S.C. § 2283.  Section 60121 is an express congressional
18  authorization to enjoin Defendants' PSA violations.

19       *Colorado River* abstention is unavailable for the same reason.  Where, as
20  here, Congress has provided an express federal cause of action in federal court,
21  *Colorado River* abstention is proper only where Congress has expressed a
22  preference for unified state court adjudication to avoid piecemeal litigation.
23  *United States v. Morros*, 268 F.3d 695, 706 (9th Cir. 2001).  Congress has
24  expressed no such preference for state adjudication of federal preemption claims
25  under the PSA, which precludes *Colorado River* abstention.

26       Section 60104's express preemption of state law also disposes of
27  Defendants' requests for *Younger* abstention, which is appropriate only where
28  concurrent state litigation relates to an important state interest.  There is no such

1  state interest here, because "[n]o significant state interest is served where the state

2  law is preempted by federal law and that preemption is 'readily apparent.'" *Bud*

3  *Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1273 (9th Cir. 1994) (citations omitted).

4  Finally, section 60104's preemption provision also negates the County's

5  claim of *Noerr-Pennington* immunity. *Noerr-Pennington* protects litigants from

6  incurring liability for exercising First Amendment rights to petition for redress of

7  grievances. The County is not immune here, however, because "[l]awsuits that are

8  preempted by federal law are not protected by the First Amendment's Petition

9  Clause." *Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200,*

10  *AFL-CIO*, 611 F.3d 483, 492 n.4 (9th Cir. 2010).

11  All of Defendants' arguments contradict the plain terms of the PSA and are

12  foreclosed by clear, controlling Ninth Circuit precedents. Defendants' meritless

13  motions should be denied in their entirety.

## BACKGROUND

### I.    Parties to the Action.

16  SoCalGas is a public utility that operates a natural gas transportation and

17  distribution system in Southern California under the regulatory jurisdictions of

18  PHMSA and the CPUC. Compl. ¶ 26-33, 45. SoCalGas' intrastate natural gas

19  transportation system includes, *inter alia*, thousands of miles of pipeline facilities

20  and four underground gas storage facilities, including the Aliso Canyon facility.

21  *Id.* ¶ 29. SoCalGas injects and withdraws gas from its underground storage

22  facilities to meet varying customer demands, enhance energy reliability, and help

23  control costs for end users. *Id.* ¶¶ 27-28.

24  The County is a municipal corporation and local governmental authority

25  created under the laws of California. Defendant Mary Wickham is the Los

26  Angeles County Counsel and is sued solely in her official capacity. *Id.* ¶¶ 15-16.

27  Cal/OSHA is a state administrative agency responsible for implementing and

28  enforcing occupational safety and health standards promulgated under state law.

PLAINTIFF'S COMBINED OPPOSITION TO
MOTIONS TO DISMISS; CASE NO. 2:17-CV-5140

1   *Id.* ¶ 18.  Defendant Juliann Sum is Division Chief of Cal/OSHA and is sued solely

2   in her official capacity.  *Id.* ¶ 19.

3   ## II.   Defendants Are Engaged in Ongoing Efforts to Impose and Enforce Preempted Safety Standards for SoCalGas' Facilities.

4

5        On October 23, 2015, SoCalGas discovered a gas leak emanating from gas

6   storage well Standard Sesnon 25 ("SS-25") at the Aliso Canyon facility.  Initial

7   efforts to bring the leaking well under control were unsuccessful.  SoCalGas

8   thereafter drilled a relief well to intercept SS-25 and end the gas leak.  Compl.

9   ¶ 34.  SoCalGas sealed SS-25 on February 18, 2016.  *Id.* ¶ 37.

10       The gas leak generated a welter of federal and state legislative and

11  administrative activity.  Chief among them, Congress passed the PIPES Act of

12  2016, which directed PHMSA to promulgate new federal safety standards for

13  underground gas storage facilities.  49 U.S.C. § 60141(a).  PHMSA complied with

14  Congress's directive by promulgating an Interim Final Rule establishing federal

15  safety standards for all underground gas storage facilities.  81 Fed. Reg. 91860

16  (Dec. 19, 2016).  In doing so, PHMSA reaffirmed that unauthorized state and local

17  regulation of gas storage facilities is prohibited because "regulation of intrastate

18  underground gas storage facilities operates in the same manner as the existing

19  federal-state regulatory scheme for gas and hazardous liquid pipelines."  *Id.*

20       Aliso Canyon also underwent months of rigorous inspection and analysis by

21  authorized state regulators.  After completing batteries of tests, on July 19, 2017,

22  the CPUC in cooperation with DOGGR determined that Aliso Canyon is safe to

23  operate, that any risks of failure had been identified and addressed, and that gas

24  storage well integrity had been verified.  RJN, Ex. 2.  Investigations by the CPUC

25  and DOGGR to determine the root cause of the gas leak are ongoing, as are CPUC

26  proceedings to evaluate future use of Aliso Canyon.  RJN, Ex. 3.

27

28

PLAINTIFF'S COMBINED OPPOSITION TO
MOTIONS TO DISMISS; CASE NO. 2:17-CV-5140

The gas leak also gave rise to civil litigation in the Los Angeles County Superior Court involving coordinated claims of multiple state and local government entities, including the County, along with claims of many thousands of individual private plaintiffs.

### A.   The County is engaging in preempted efforts to regulate safety standards for SoCalGas' facilities.

On July 25, 2016, the County filed a lawsuit against SoCalGas in Los Angeles Superior Court.  Compl. ¶ 54, Ex. C.  The County admits that its lawsuit serves a purely regulatory purpose: "The purpose of this lawsuit, and a remedy sought herein, is to … [require] SoCalGas to install sub-surface safety shut-off valves—a modern 'state of the art' gas well safety system—on each and every gas well it operates in Los Angeles County."  *Id*. ¶ 55.  The County's state lawsuit thus seeks to impose on SoCalGas local requirements to install new safety equipment and to implement a "state of the art safety system" (whatever that may entail).

The County's state court complaint packages its effort to regulate SoCalGas' facilities into several different causes of action, including public nuisance, unfair competition, breach of franchise, and breach of lease.  *Id*. ¶¶ 56, 58-60.  For each cause of action, the County seeks as relief to impose new safety standards for the design and operation of SoCalGas' facilities, in the form of an order "requiring the installation of sub-surface safety shut-off valves and/or other components of a modern 'state of the art' safety system on all active wells and distribution pipelines in Los Angeles County."  Compl., Ex. C, ¶ 4, Prayer for Relief, at 69.

In addition to its civil action, the County also seeks to impose new safety requirements on SoCalGas' facilities through local legislation.  To that end, the County has created a so-called "Strike Team," the stated purpose of which is to recommend actions the County should take "to support the overall safety of these facilities in relation to the surrounding communities."  Compl. ¶¶ 61-62.  The County has tasked the Strike Team with updating the County's zoning code to

6

ensure that gas pipeline facilities "may no longer operate by right in the unincorporated portions of the County," and that all natural gas pipeline facilities operate under regulations that "reflect best practices and current mitigation methods and technologies, minimize environmental impacts and protect sensitive uses and populations." *Id.* ¶ 63.

## B. Cal/OSHA has cited SoCalGas for allegedly violating preempted state safety standards.

Following the gas leak, Cal/OSHA issued four administrative citations to SoCalGas for alleged violations of various California rules and regulations related to occupational health and safety at the Aliso Canyon facility.  Compl. ¶ 75, Ex. G.  Specifically, Cal/OSHA has cited SoCalGas for the following alleged violations:

- failing to "ensure that the Incident Commander (IC) was trained to the first responder operations level and [failing to] certify that the IC knew how to implement the Employer's incident command system," (*id.*, Ex. G, 161-62);

- failing "to ensure that the testing and inspection of the piping consisting of casing and tubing of [SoCalGas'] storage wells at its Aliso Canyon underground natural gas storage facility, including the well designated as Standard Sesnon 25 (SS25), complied with testing and inspection requirements of API [American Petroleum Institute] 570, Piping Inspection Code," (*id.* at 163); and

- failing to "make reasonable efforts by inspection and maintenance to prevent the possible occurrence of leaks from piping consisting of casing and tubing of the [SoCalGas'] wells at its Aliso Canyon underground natural gas storage facility," (*id.* at 164); and,

- violating state laws governing safety equipment and conditions during the efforts to respond to the gas leak.  (*id.* at 158-60).

Cal/OSHA has proposed more than $60,000 in penalties on SoCalGas based on alleged violations of preempted Cal/OSHA state safety standards.  Compl.,

PLAINTIFF'S COMBINED OPPOSITION TO
MOTIONS TO DISMISS; CASE NO. 2:17-CV-5140

Ex. G at 165.  SoCalGas has appealed the citations and asserted and preserved various defenses, including federal preemption, in an administrative appeal to the Cal/OSHA Appeals Board.  The appeal remains pending, and the Appeals Board has not set a hearing date for the appeal.

## III.  Federal Law Expressly Preempts State and Local Safety Standards for Natural Gas Pipeline and Storage Facilities.

Congress enacted the PSA to "provide adequate protection against risks to life and property posed by pipeline transportation and pipeline facilities by improving the regulatory and enforcement authority of the Secretary of Transportation."  49 U.S.C. § 60102(a).  To fulfill the PSA's legislative purpose, the PSA authorizes and directs DOT to promulgate federal minimum safety standards for all gas pipeline and underground gas storage facilities relating to "the design, installation, inspection, emergency plans and procedures, testing, construction, extension, operation, replacement, and maintenance of pipeline facilities." 49 U.S.C. § 60102(a)(2)(B).  This grant of regulatory authority to DOT expressly occupies "the entire field of gas pipeline safety. . . ."  *United Steelworkers of Am., Local 12431 v. Skinner,* 768 F. Supp. 30, 35 (D.R.I. 1991).

SoCalGas' intrastate pipeline facilities and underground gas storage facilities are governed by the PSA.  "Gas pipeline facilities" subject to the PSA include all intrastate and interstate pipelines, rights of way, and any facility, building, or equipment used in transporting or treating gas during its transportation. 49 U.S.C. § 60101(a)(3).  Underground gas storage facilities are regulated in the same manner as gas pipeline facilities.  49 U.S.C. § 60101(a)(26) ("'[U]nderground natural gas storage facility' means a gas pipeline facility that stores natural gas in an underground facility").

The PSA vests DOT with exclusive jurisdiction to regulate safety standards for all natural gas pipeline facilities, which DOT has delegated to PHMSA for implementation.  While state authorities have no role in the safety regulation of

PLAINTIFF'S COMBINED OPPOSITION TO
MOTIONS TO DISMISS; CASE NO. 2:17-CV-5140

interstate pipeline facilities, PHMSA may authorize state authorities to participate in safety regulation for intrastate facilities.  Under the PSA, "a state authority may regulate intrastate pipelines and impose safety requirements in addition to the federal standards *only if*: (1) the state authority applies and is approved by the DOT through an annual certification process pursuant to § 60105; and (2) the standards are compatible with the federal standards."  *Olympic*, 437 F.3d at 878 (emphasis added) (citing 49 U.S.C. §§ 60104(c)).  Safety regulation by state authorities outside of this federal authorization procedure is expressly prohibited.  *Id.*

The CPUC is the only state authority in California that PHMSA has certified to participate in regulation of gas pipeline and storage facility safety through this statutory process.  *See* Cal. Pub. Util. Code § 955(b); *City and Cty. of San Francisco v. U.S. Dep't of Transp.*, 796 F.3d 993, 997 (9th Cir. 2015).  Absent PHMSA authorization, a state or local government authority may not regulate natural gas facilities even if the state or local standards are consistent with the federal standards.  Because state law is expressly preempted, no conflict between state and federal law is necessary for preemption.  *See ANR Pipeline Co. v. Iowa State Commerce Comm'n*, 828 F.2d 465, 472 (8th Cir. 1987) (holding that a state is "is not free to regulate in this area, even if it adopts standards identical to the federal standards" and both state rulemaking and enforcement are prohibited).

Accordingly, it is well established that the PSA expressly preempts all unauthorized state and local safety standards for gas pipeline and storage facilities and prohibits unauthorized state authorities such as Defendants from imposing or enforcing safety standards for such facilities.  *See, e.g.*, *Olympic*, 437 F.3d at 880 (local government entity's attempt to impose safety standards on pipeline facility preempted); *Washington Gas Light Co. v. Prince George's Cty. Council*, 711 F.3d 412, 420 (4th Cir. 2013) ("the PSA expressly preempts the field of pipeline safety"); *Texas Midstream Gas Servs., LLC v. City of Grand Prairie*, 608 F.3d 200, 210 (5th Cir. 2010) (recognizing that the PSA expressly preempts the field of

"safety standards" for pipeline facilities); *S. Union Co. v. Lynch*, 321 F. Supp. 2d 328, 338 (D.R.I. 2004) ("Congress explicitly expressed its intention to preempt all state regulation in the area of pipeline safety unless such state efforts meet specific requirements"); *Colorado Interstate Gas Co. v. Wright*, 707 F. Supp. 2d 1169, 1188 (D. Kan. 2010) ("[T]here is no basis in the statutory text or legislative history for the defendants to read out underground storage facilities from the encompassing plain terms of the PSA[;]" therefore state regulation is preempted).

## ARGUMENT

### I.    Standards on Motion to Dismiss.

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court accepts all factual allegations as true, draws all reasonable inferences in favor of the non-moving party, and will dismiss only where the complaint fails to state a plausible claim for relief as a matter of law. *Deirmenjian v. Deutsche Bank*, *A.G.*, 526 F. Supp. 2d 1068, 1073 (C.D. Cal. 2007). A complaint need only include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A defendant may seek to dismiss a complaint for "lack of subject-matter jurisdiction[.]" Fed. R. Civ. Proc. 12(b)(1). The party seeking to invoke the jurisdiction of the federal court has the burden of establishing that jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). Federal courts possess federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Whether a federal question is presented depends on the language of the complaint as well as "whether [federal] jurisdiction would exist under a properly pleaded complaint." *Easton v. Crossland Mortg. Corp.*, 114 F.3d 979, 982 (9th Cir. 1997).

### II.    This Court Has Federal Subject Matter Jurisdiction Under the PSA.

The County argues that this Court lacks subject matter jurisdiction because, according to the County, SoCalGas' claim is a "state court defense brought as an

PLAINTIFF'S COMBINED OPPOSITION TO
MOTIONS TO DISMISS; CASE NO. 2:17-CV-5140

affirmative claim." The County's Memorandum of Law in Support of Motion, Dkt. No. 31-1, at 15-16 ("County Mot."). The County's argument is misplaced.

This Court has subject matter jurisdiction because Congress has expressly provided a federal private right of action for injunctive relief against governmental authorities that violate the PSA's preemption provisions. *See City and Cty of San Francisco,* 796 F.3d at 998 (holding that "private citizen suits are authorized for substantive statutory or regulatory violations" of the PSA in federal court)*; Laclede Gas Co.*, 713 F.3d at 418 (holding that PSA injunction action against County attempting to unlawfully regulate natural gas pipeline "is squarely within the wheelhouse of the PSA's injunctive relief provision"). Section 60121(a) authorizes a "civil action in an appropriate district court of the United States for an injunction against … governmental authorities … for a violation" of the PSA. Section 60121 thus permits suits in federal court for injunctive relief against government entities like Defendants, because unauthorized regulation by a state authority violates PSA section 60104's prohibition against such regulation. *See Williams Pipeline Co. v. City of Mounds View*, 651 F. Supp. 551, 571 (D. Minn. 1987) (enjoining city and county from regulating pipeline facility safety); *Northern Border Pipeline Co. v. Jackson County*, 512 F. Supp. 1261, 1266 (D. Minn. 1981).

Section 60121 is a complete answer to the federal jurisdiction question. Nevertheless, the County asserts that jurisdiction is lacking because SoCalGas' preemption claim is "nothing more than a defense to the County's state court actions." County Mot. at 15. As purported support, the County relies on three inapposite cases, *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248 (1952); *Alton Box Bd. Co. v. Esprit de Corp.*, 682 F.2d 1267, 1274 (9th Cir. 1982); *Armstrong v. Armstrong*, 696 F.2d 1237, 1238 (9th Cir. 1983). These cases are readily distinguishable. In each case, the court lacked jurisdiction because the plaintiff sought relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, but had no federal statutory right of action authorizing a suit for injunctive relief in

PLAINTIFF'S COMBINED OPPOSITION TO
MOTIONS TO DISMISS; CASE NO. 2:17-CV-5140

1    federal court, and in the cases of *Alton* and *Armstrong*, the plaintiff anticipated a

2    federal preemption defense in a state court suit between private parties.

3        Those cases do not control here, because the PSA provides an express cause

4    of action for injunctive relief against governmental authorities to prevent

5    preempted regulation.  *See ANR Pipeline Co. v. Corporation Com'n of State of*

6    *Okl.,* 860 F.2d 1571, 1576 (10th Cir. 1988) (distinguishing *Wycoff* in suit under the

7    National Gas Policy Act of 1978 because "this suit is not based solely on a claim

8    for declaratory judgment but also includes a claim for injunction," and plaintiff

9    contended state action was "pre-empted by federal statutes").  "The district court's

10   jurisdiction to resolve [SoCalGas'] claim for injunction extends to enable the court

11   also to resolve the issues raised by the declaratory judgment action." *Id.*

12       The County's cases also are distinguishable because SoCalGas is asserting

13   federal preemption against state officials.  "A plaintiff who seeks injunctive relief

14   from state regulation, on the ground that such regulation is pre-empted by a federal

15   statute which, by virtue of the Supremacy Clause of the Constitution, must prevail,

16   thus presents a federal question which the federal courts have jurisdiction under 28

17   U.S.C. § 1331 to resolve." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96 n. 14

18   (1983) (citations omitted).  The Supreme Court has held that "[i]t is beyond dispute

19   that federal courts have jurisdiction over suits to enjoin state officials from

20   interfering with federal rights." *Id.* (citation omitted).  It therefore also is "beyond

21   dispute" that the County's argument is wrong, not least because the County's

22   argument is premised entirely on cases preceding *Shaw*.  *See Guar. Nat. Ins. Co. v.*

23   *Gates,* 916 F.2d 508, 511 (9th Cir. 1990) (distinguishing *Alton*).

24       The County's pending state court action against SoCalGas does not and

25   cannot of itself deprive this Court of jurisdiction to decide SoCalGas' preemption

26   claim.  *See New Orleans Public Service, Inc. v. Council of City of New Orleans*,

27   491 U.S. 350, 373 (1989) ("[T]here is no doctrine that ... pendency of state judicial

28   proceedings excludes the federal courts."); *Chamberlain v. Allstate Ins. Co.*, 931

12

F.2d 1361, 1367 (9th Cir. 1991) ("The pendency of a state court action, however, does not of itself require a district court to refuse declaratory relief in federal court.")  Nor can SoCalGas be forced to forego its right to federal adjudication and "accept instead a state court's determination of those claims." *England v. Louisiana State Bd. of Med. Exam'rs*, 375 U.S. 411, 415 (1964).  For this reason, SoCalGas has preserved its federal preemption defense in state court but has not sought a ruling there on federal preemption.  Instead, SoCalGas has moved for judgment on the pleadings in state court on the ground that *state law* preempts the County's claims.  RJN, Ex. 4.  In doing so, SoCalGas informed the Superior Court that it had presented its federal preemption claim to this Court for decision.  *Id.* at 8.  The Ninth Circuit has approved this approach where there are concurrent federal and state litigations and a litigant wishes to preserve a federal claim for federal adjudication.  *See United Parcel Serv., Inc. v. Cal. Pub. Util. Comm'n*, 77 F.3d 1178, 1183 (9th Cir. 1996) (a party who reserves a federal claim in a parallel state court litigation "retains his right to a federal forum").

**III.   SoCalGas Has Stated Valid Claims for Relief Under the PSA.**

　　　**A.   SoCalGas has stated a claim for relief against the County.**

　　　The County mistakenly argues that section 60121 of the PSA creates no private right of action against it because "the PSA gives private citizens the right to prosecute *regulated parties* for violations of the PSA" and the County contends it is not a "regulated party."  County Mot. at 17 (emphasis in original).  Section 60121 says nothing about "regulated parties."  It does, however, explicitly authorize "*any person*" to "bring a civil action … for an injunction against … *governmental authorities* … for a violation" of the PSA.  49 U.S.C. § 60121(a)(1) (emphases added).  Unauthorized regulation by state authorities like the County violates PSA section 60104(c)'s limitation that only a state authority that has "submitted a current certification under section 60105(a) … may adopt additional or more stringent safety standards for intrastate pipeline facilities …." 49 U.S.C. §

1   60104(c).  Accordingly, the County is a "regulated party" under the PSA—not a

2   "regulator"—and may be sued to enjoin its violations.

3          While the PSA's text leaves no doubt on this point, the Ninth Circuit's

4   decision in *Olympic*, 437 F.3d at 872 has confirmed that the PSA authorizes

5   injunctions against preempted regulation by unauthorized government authorities.

6   There, the City of Seattle responded to a pipeline explosion by refusing to renew

7   Olympic's franchise until it performed certain safety tests and inspections.  *Id*. at

8   874-76.  Olympic refused and sued Seattle for "injunctive relief restraining the

9   City from ordering Olympic to shut down" its pipeline "and a declaratory

10  judgment that … the PSA preempts Seattle's attempts to control, regulate, or

11  otherwise interfere with matters relating to the safety, design, construction, testing,

12  or operation of Olympic's pipeline."  *Id*. at 876.  The district court enjoined Seattle

13  and found that the "PSA preempted the City's attempts to regulate the safety and

14  inspection of the [pipeline]." *Id.*  The Ninth Circuit affirmed, holding that Seattle's

15  demands were attempted safety regulation in violation of the PSA.  *Id*. at 879-81.

16         This action is essentially the same as the suit in *Olympic* because the County

17  is attempting to regulate safety standards for SoCalGas' facilities through its action

18  in state court, and the same result is required.  *See San Diego Unions v. Garmon*,

19  359 U.S. 236, 247 (1959) (holding that lawsuit in state court by state governmental

20  entity was unlawful regulation preempted by the National Labor Relations Act

21  because "regulation can be as effectively exerted through an award of damages as

22  through some form of preventive relief"); *Int'l Paper Co. v. Ouellette*, 479 U.S.

23  481, 494 (1987) (holding that nuisance actions under state law were preempted by

24  the Clean Water Act because they "interfere[d] with the methods by which the

25  federal statute was designed to reach [its] goal"); *Law v. General Motors Corp.,*

26  114 F.3d 908, 913 (9th Cir. 1997) (holding that state law tort action was preempted

27  because federal law "preempts every state effort to establish independent standards

28  for the design, construction and material of locomotives.").

The County cites no case to the contrary.  The County mistakenly relies on *City and County of San Francisco*, where the Ninth Circuit held that "the Pipeline Safety Act's citizen suit provision does not allow mandamus-type actions against [PHMSA] in its capacity as regulator." 796 F.3d at 998.  This is not such an action because the County is not certified by PHMSA, it has no regulatory authority under the PSA, and therefore it cannot act as a "regulator" under the PSA.  For the same reason, *Bennett v. Spear*, 520 U.S. 154 (1997) and *Sierra Club v. Korleski*, 681 F.3d 342, 349 (6th Cir. 2012) also are inapposite.  Neither case holds that the County cannot be enjoined from violating the PSA's express prohibition against unauthorized state and local safety regulation.

## B. SoCalGas has stated a claim for relief against Cal/OSHA.

Cal/OSHA argues that its citations and penalties are not preempted by the PSA because their purpose is to regulate "workplace safety" as opposed to safety of the public at large.  State Defendants' Memorandum of Points and Authorities, Dkt. No. 33 at 11-14 ("Cal/OSHA Mot.").  That argument fails for two reasons.

*First*, Cal/OSHA mischaracterizes its citations and penalties as enforcement of mere "workplace safety rules."  Among other things, Cal/OSHA has cited SoCalGas for allegedly failing to test and inspect gas storage wells according to American Petroleum Institute standards (Compl., Ex. G at 163), allegedly failing to inspect and maintain equipment to prevent gas leaks, (*id.* at 164), and the alleged inadequacy of SoCalGas' emergency response to the gas leak (*id.*).  These citations relate to safety standards for natural gas facility design, operation, and maintenance at the core of the PSA.  *See* 49 U.S.C. § 60102(a)(2)(B).

*Second*, even if Cal/OSHA's citations could be characterized as enforcement of mere "workplace safety" rules, the PSA does not distinguish between "workplace safety" and other preempted safety standards—all safety standards are preempted.  The legislative purpose of the PSA is to "provide adequate protection against risks to life and property posed by pipeline transportation and pipeline

PLAINTIFF'S COMBINED OPPOSITION TO
MOTIONS TO DISMISS; CASE NO. 2:17-CV-5140

facilities" by setting safety standards for all pipeline facilities relating to "the design, installation, inspection, emergency plans and procedures, testing, construction, extension, operation, replacement, and maintenance of pipeline facilities." 49 U.S.C. § 60102(a)(1), (a)(2)(B).  This comprehensive list does not carve out "workplace safety" rules.

Cal/OSHA's argument was considered and rejected in a previous case between the same parties, *Southern California Gas Company v. Occupational Safety & Health Appeals Board.*, 58 Cal. App. 4th 200 (1997).  There, Cal/OSHA penalized SoCalGas for allegedly failing to have adequately designed machinery and equipment at SoCalGas' gas pipeline facility, in violation of state regulations. SoCalGas argued that Cal/OSHA had no authority to regulate the safety of SoCalGas' pipeline facilities under the PSA.  *Id*. at 202.  As here, Cal/OSHA argued that PSA preemption "applies only to regulations relating to the safety of the public in general, and not to occupational health and safety regulations designed to protect employees in the workplace."  *Id*. at 203-04.  The court rejected Cal/OSHA's argument, holding that Congress did not intend "to permit the states to regulate the design or use of any part of an interstate natural gas pipeline or the equipment used to maintain it, whether the purpose of the state is to protect the public at large or the pipeline workers in particular."  *Id*. at 205.

The same result is required here.  Cal/OSHA attempts but fails to distinguish *SoCalGas* based on an illusory distinction between regulation of interstate and intrastate pipeline facilities.  Cal/OSHA Mot. at 13.  The only relevant difference between the two is that a state authority may *never* regulate safety of interstate facilities, but a state authority "that has submitted a current certification" and been authorized by PHMSA may participate in safety regulation for intrastate facilities. 49 U.S.C. §60104(c).  That distinction is no help to Cal/OSHA because, as the Ninth Circuit has held, unauthorized state authorities like Cal/OSHA may not regulate either interstate or intrastate facilities.  *Olympic*, 437 F.3d at 878-80.

16

1    Cal/OSHA's cases are inapposite.  In *Texas Midstream Gas Services,* 608

2    F.3d at 211-12, the Fifth Circuit held that local zoning rules may not be preempted

3    by the PSA, but only where the purpose of the rule is purely aesthetic and not

4    safety-related.  Cal/OSHA's "workplace safety rules" obviously are safety-related.

5    *Panhandle E. Pipe Line Co. v. Madison Cty. Drainage Bd.*, 898 F. Supp. 1302,

6    1306–07 (S.D. Ind. 1995) also is inapposite because there the court found that a

7    county's authority to widen and deepen a drainage ditch above a pipeline was not

8    preempted, even though the pipeline had to be moved as a result, because the

9    county had imposed no safety standards on the pipeline facility.  *Abramson v.

10   Florida Gas Transmission Co.*, 909 F. Supp. 410, 417 (E.D. La. 1995) and

11   *American Energy Corp. v. Texas Eastern Transmission, LP*, 701 F. Supp. 2d 921,

12   929–30 (S.D. Ohio 2010) also are inapposite because both held that private party

13   claims for property damages were not preempted and said nothing about

14   preemption of state "workplace safety" regulation and enforcement.

15   **IV.    The Anti-Injunction Act Does Not Bar This Action.**

16        Defendants' reliance on the Anti-Injunction Act, 28 U.S.C. § 2283, is

17   misplaced.  The Anti-Injunction Act provides that federal courts "may not grant an

18   injunction to stay proceedings in a State court *except as expressly authorized by

19   Act of Congress* …." *Id.* (emphasis added).  The congressional authorization

20   exception applies here because the PSA expressly authorizes injunctive relief.

21        To qualify for the exception, "an Act of Congress must have created a

22   specific and uniquely federal right or remedy, enforceable in a federal court of

23   equity, that could be frustrated if the federal court were not empowered to enjoin a

24   state court proceeding." *Mitchum v. Foster*, 407 U.S. 225, 237 (1972).  As

25   explained above, section 60121(a)(1) expressly provides a federal right of action to

26   enjoin an unauthorized state authority from violating the PSA.  *See* supra, III.A.  It

27   does not matter that section 60121 does not specifically refer to enjoining state

28   court litigation because "federal law need not expressly authorize an injunction of

17

1  a state court proceeding in order to qualify as an exception." *Mitchum*, 407 U.S. at

2  237. Congress has created a "specific and uniquely federal right or remedy,

3  enforceable in a federal court," *id.*, by authorizing private parties to sue

4  governmental authorities to enjoin their violations of the PSA. 49 U.S.C. §

5  60121(a)(1). That federal right and remedy would be frustrated if governmental

6  authorities like Defendants could regulate pipeline and storage facilities with

7  impunity in violation of the PSA merely by filing lawsuits in state court to

8  accomplish their illegal regulatory aims. Accordingly, the Anti-Injunction Act

9  does not bar this action against Defendants.

10       Moreover, Cal/OSHA's argument is misplaced for the independent reason

11  that "the Anti–Injunction Act does not bar an injunction against an ongoing state

12  *administrative* adjudication." *Bud Antle, Inc.*, 45 F.3d at 1271–72 (emphasis in

13  original). Undeterred by this binding Ninth Circuit precedent, Cal/OSHA asserts

14  that its appeals board "is not an administrative agency, and instead is judicial in

15  nature" (Cal/OSHA Mot. at 9), so the Anti-Injunction Act should be deemed to

16  apply. The Anti-Injunction Act bars federal injunctions of "proceedings in a *State

17  court* …." 28 U.S.C. § 2283 (emphasis added). Cal/OSHA's Appeals Board is

18  not a "State court." *See Bud Antle, Inc.,* 45 F.3d at 1271.

19  **V.  Abstention Is Unavailable Under Any Abstention Doctrine.**

20       Abstention is "an extraordinary and narrow exception to the duty of a

21  District Court to adjudicate a controversy properly before it." *Champion Int'l

22  Corp. v. Brown*, 731 F.2d 1406, 1408 (9th Cir. 1984) (citations and quotation

23  omitted). "[F]ederal courts have a 'virtually unflagging obligation' to exercise

24  their jurisdiction." *Newberry v. Pac. Racing Ass'n*, 854 F.2d 1142, 1151 (9th Cir.

25  1988) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S.

26  800, 817 (1976)). "Accordingly, 'the balance must always tip heavily in favor of

27  exercising jurisdiction.'" *Bud Antle*, 45 F.3d at 1272 (citation omitted). "In the

28  main, federal courts are obliged to decide cases within the scope of federal

PLAINTIFF'S COMBINED OPPOSITION TO
MOTIONS TO DISMISS; CASE NO. 2:17-CV-5140

1  jurisdiction.  Abstention is not in order simply because a pending state-court

2  proceeding involves the same subject matter." *Sprint Commc'ns, Inc. v. Jacobs*,

3  134 S.Ct. 584, 588 (2013).  Even where there are ongoing parallel state

4  proceedings abstention is the "'exception, not the rule.'" *Hawaii Hous. Auth. v.*

5  *Midkiff*, 467 U.S. 229, 236 (1984) (quoting *Colorado River*, 424 U.S. at 813).

6  Defendants' arguments provide no sound basis for this Court to abstain.

7       **A.     The *Colorado River* abstention doctrine is inapplicable.**

8       The Ninth Circuit has held that the *Colorado River* doctrine "has no

9  applicability" where, as here, a federal district court is asked to decide federal

10  preemption issues.  *Morros*, 268 F.3d at 707.  In *Morros*, the United States sought

11  declaratory and injunctive relief in federal court claiming that Nevada's refusal to

12  grant a water permit for the Yucca Mountain nuclear waste disposal site was

13  preempted by the Nuclear Waste Policy Act and requested an injunction

14  prohibiting further interference.  *See id*. at 697–99.  The state moved to dismiss for

15  lack of jurisdiction or, alternatively, for abstention in favor of a concurrent state

16  court action addressing the same subject.  The district court abstained.  *Id.*  at 699.

17       On appeal, the Ninth Circuit held that the district court abused its discretion

18  by abstaining.  In *Colorado River*, the Supreme Court's "chief concern" in

19  balancing considerations of wise judicial administration "was with avoiding

20  piecemeal litigation." *Id*. at 706.  The Ninth Circuit held that "the avoidance of

21  piecemeal litigation factor is met … only when there is evidence of a strong federal

22  policy that all claims should be tried in the state courts." *Id*. at 706–07 (citations

23  omitted).  Accordingly, the Ninth Circuit held that "*Colorado River* stands for the

24  proposition that when Congress has passed a law expressing a preference for

25  unified state adjudication, courts should respect that preference," but Congress has

26  passed no law expressing such a preference for state adjudication of federal

27  preemption claims.  *Id.* at 706; *see also Sw. Bell Tel. Co. v. Arkansas Pub. Serv.*

28  *Comm'n*, 824 F.2d 672, 673 (8th Cir. 1987) ("Where a challenge to a state

19

1  regulatory scheme asserts that the proceeding or regulation at issue is beyond the

2  state's authority, abstention or exhaustion arguments are seldom applicable."). To

3  the contrary, "[i]t would be surprising indeed if Congress had passed a law

4  expressing a preference for state adjudication of federal preemption issues."

5  *Morros*, 268 F.3d at 707. *Colorado River* therefore generally "has no

6  applicability" to cases asserting federal preemption of state law. *Id.*

7        *Morros* is fatal to the County's request for *Colorado River* abstention.

8  Congress has not expressed preference for state adjudication of federal preemption

9  claims under the PSA. In fact, by providing a federal right of action, it has done

10  the opposite and expressed its preference for *federal* adjudication of PSA

11  preemption claims. *See* 49 U.S.C. § 60121(a). Abstention therefore is improper.

12        Moreover, "the presence of federal-law issues must always be a major

13  consideration weighing against surrender" of federal court jurisdiction and here

14  only questions of federal law are at issue. *Moses H. Cone Mem'l Hosp. v. Mercury*

15  *Constr. Corp.*, 460 U.S. 1, 26 (1983). Where, as here, federal law controls,

16  *Colorado River* abstention is inappropriate and should be denied. *See Cedar*

17  *Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 879 (8th Cir. 2002).

18        **B.    *Younger* abstention is precluded.**

19        *Younger* abstention is available in only "three exceptional categories" of

20  cases. *Sprint Commc'ns, Inc.*, 134 S. Ct. at 592. These are: "(1) 'parallel, pending

21  state criminal proceeding[s],' (2) 'state civil proceedings that are akin to criminal

22  prosecutions,' and (3) state civil proceedings that 'implicate a State's interest in

23  enforcing the orders and judgments of its courts.'" *ReadyLink Healthcare, Inc. v.*

24  *State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014) (rejecting abstention

25  because preemption action did not implicate any of the three categories) (citing

26  *Sprint Commc'ns, Inc.*, 134 S Ct. at 588). Defendants do not specify which of the

27  foregoing "exceptional categories" they contend applies here. *See* Cal/OSHA Mot.

28  at 11; County Mot. at 23. There are no pending state criminal proceedings, and

20

Defendants do not contend that their pending state judicial and administrative actions are "akin to criminal proceedings" or implicate enforcement of any state court order. *Younger* abstention is improper for this reason alone. *See Sprint Commc'ns, Inc.*, 134 S. Ct. at 594 ("*Younger* extends to the three 'exceptional circumstances' … but no further.").

Even if one of the "exceptional categories" applied, *Younger* abstention is appropriate in civil cases "only when the state proceedings … implicate an important state interest …." *ReadyLink Healthcare, Inc.,* 754 F.3d at 759. That requirement cannot be satisfied here, because the Ninth Circuit has held that "[n]o significant state interest is served where the state law is preempted by federal law and that preemption is readily apparent." *Bud Antle, Inc.*, 45 F.3d at 1273 (citations omitted). Abstention is inappropriate where federal preemption is "readily apparent" because "there is 'no principle of comity or of "our federalism"' that abstention would serve." *Id.* (quoting *Baggett v. Dep't of Prof'l Regulation*, 717 F.2d 521, 524 (11th Cir. 1983)). Accordingly, the Ninth Circuit will "not apply *Younger* abstention in a case of clear preemption." *Id.* (citing *Gartrell Constr., Inc. v. Aubry,* 940 F.2d 437, 441 (9th Cir. 1991)).

For all the reasons argued, *supra*, this is a case of "clear preemption" and it is "readily apparent" that the PSA expressly preempts unauthorized state authorities like Defendants from imposing or enforcing safety standards on SoCalGas' facilities. *Olympic*, 437 F.3d at 880 ("the PSA expressly preempts the City's attempt to impose safety regulations" on pipeline facility); 49 U.S.C. § 60104(c). *Younger* abstention therefore is unavailable.

## VI. The County Is Not Immune Under *Noerr-Pennington*.

Mischaracterizing *Noerr-Pennington* as an abstention doctrine, the County argues that it is immune from liability under the PSA because it seeks to impose and enforce preempted safety standards on SoCalGas' facilities by filing lawsuits

21

1   in state court instead of by passing local ordinances.  County Mot. at 21-23.  The

2   County's immunity argument is foreclosed by clear Ninth Circuit precedent.

3       "Originating as a shield against antitrust liability, the *Noerr-Pennington*

4   doctrine provides that concerted efforts to petition the government" may "be

5   protected by the First Amendment's Petition Clause when certain criteria are met."

6   *United Nurses Ass'ns of Cal. v. Nat'l Labor Relations Bd.*, 871 F.3d 767, 787 (9th

7   Cir. 2017).  The *Noerr-Pennington* doctrine does not immunize the County from

8   liability under the PSA here because "lawsuits that are preempted by federal law

9   are not protected by the First Amendment's Petition Clause."  *Small*, 611 F.3d at

10  492 n.4; *United Nurses Ass'ns of Cal.*, 871 F.3d at 787 (preempted lawsuits are not

11  protected by *Noerr-Pennington* immunity).  Accordingly, the County's *Noerr-*

12  *Pennington* doctrine immunity argument fails.

13  **VII.   The County Received Required Notice Under the PSA.**

14      Finally, SoCalGas complied with the PSA's pre-filing notice requirement.

15  49 U.S.C. § 60121(a)(1)(A); Compl., Ex. A at 26-28.  The County argues that

16  notice was inadequate because Defendant Mary C. Wickham allegedly did not

17  receive the notice letter (although the County itself received it) and the letter

18  purportedly "does not state the specific violations of the PSA the County has

19  allegedly committed …."  County Mot. at 19.  These objections are immaterial.

20      *First,* Ms. Wickham is sued in her official capacity as a stand-in for the

21  County itself.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  "As long as the

22  government entity receives notice and an opportunity to respond, an official-

23  capacity suit is, in all respects other than name, to be treated as a suit against the

24  entity."  *Id.*  The County does not deny that SoCalGas sent and the County

25  received the notice letter to Ms. Wickham and to the County.  Section

26  60121(a)(1)(A) requires nothing more.

27      *Second,* the notice letter put the County on notice that its efforts "to

28  promulgate safety standards" for SoCalGas' facilities "through litigation,

PLAINTIFF'S COMBINED OPPOSITION TO
                                              MOTIONS TO DISMISS; CASE NO. 2:17-CV-5140

administrative penalties, or other means" were in violation of the PSA, 49 U.S.C. §

60105, because the County is not certified by PHMSA. Compl., Ex. A.

SoCalGas' notice also explicitly references the PSA's pre-suit notice requirement,

leaving no ambiguity about SoCalGas' intention to file this action for injunctive

relief should the County refuse to bring itself into compliance with the PSA. *Id.*

*Finally,* no law requires identification of each alleged violation of law for

notice to be sufficient, as the County claims. *See Klamath-Siskiyou Wildlands Ctr.*

*v. MacWhorter,* 797 F.3d 645, 652 (9th Cir. 2015) (holding that notice is sufficient

if it provides enough information, when combined with the violator's knowledge

of its own activities, to allow identification of the allegedly violating conduct).

The purposes of a pre-suit notice requirement are: (1) to allow government

agencies time to act to enforce the law; and (2) to give the alleged violator

opportunity to cure its violations. *Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 29

(1989). SoCalGas' notice letter fulfilled these legislative purposes and the County

has suffered no prejudice as a result of the allegedly inadequate notice.

## CONCLUSION

For all the foregoing reasons, this Court should deny Defendants' motions to

dismiss and/or for abstention in their entirety.

Dated: November 6, 2017          Respectfully Submitted,

                                 MORGAN, LEWIS & BOCKIUS LLP


                                 By /s/ Yardena R. Zwang-Weissman
                                    James J. Dragna
                                    David L. Schrader
                                    Yardena R. Zwang-Weissman

                                    *Attorneys for Plaintiff*
                                    *Southern California Gas Company*

PLAINTIFF'S COMBINED OPPOSITION TO
          MOTIONS TO DISMISS; CASE NO. 2:17-CV-5140